In re CONSOLIDATED WATER UTILITIES, INC., Debtor.

M & I THUNDERBIRD BANK, Appellant,

v.

Sue BIRMINGHAM, et al., Appellees.

BAP No. AZ–96–1417–MERBO.

Bankruptcy No. 93–06643–PHX–GBN.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 20, 1997.

Decided Jan. 9, 1998.

Craig J. Bolton, O'Connor, Cavanagh, Phoenix, AZ, for M & I Thunderbird.

John R. Worth, Phoenix, AZ, for Sue Birmington.

Before: MEYERS, RUSSELL, and BOWIE [1], Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge.

### I

The sale of the debtor's assets pursuant to its Chapter 11 liquidating plan proved more successful than expected, resulting in a solvent estate. The appellant, an unsecured creditor, argues that the bankruptcy court erred in denying it postpetition interest on its claim.

We **AFFIRM**.

### II

### FACTS

Consolidated Water Utilities, Inc. ("Debtor") filed a Chapter 11 bankruptcy petition on June 30, 1993. Both the Debtor and creditor Jaco Oil Company ("Jaco") proposed plans of reorganization. Unsecured creditor M & I Thunderbird Bank ("Appellant") voted in favor of Jaco's plan ("Plan"). The Plan

---

1. Hon. Peter W. Bowie, Bankruptcy Judge for the Southern District of California, sitting by designation.

provided that all of the Debtor's assets would be sold by auction. The Plan was confirmed by the bankruptcy court.

The proceeds from the sale held on October 16, 1995 were more than sufficient to pay all secured and unsecured claims. On November 17, 1995, the Post–Confirmation Agent who had been appointed to administer the estate filed a Motion to Approve Distribution. The Appellant objected to the motion on the basis that it failed to provide for interest payments on unsecured claims. Sue Birmingham ("Birmingham"), one of the Debtor's limited partners, filed a brief asserting that postpetition interest was not appropriate.

The court heard the matter and denied the objection to the motion. The Appellant appealed the order denying its objection to the Motion to Approve Distribution.

The Post–Confirmation Agent subsequently obtained a court order which segregated funds to pay postpetition interest in the event the court's order denying interest were to be reversed.

## III

## STANDARD OF REVIEW

The focus of this appeal is whether the Plan provides for postpetition interest. Several courts have held that an appellate court should defer to the bankruptcy court's interpretation of the confirmed Chapter 11 plan. *See Monarch Life Ins. Co. v. Ropes & Gray,* 65 F.3d 973, 983 (1st Cir.1995); *Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 961 F.2d 1260, 1264 (7th Cir.1992); *In re Ranch House of Orange–Brevard, Inc.,* 773 F.2d 1166, 1168–69 (11th Cir.1985).

Neither the Ninth Circuit Court of Appeals nor the Ninth Circuit BAP has ruled on the issue. It may be that deference should not be given under Ninth Circuit case law. The Ninth Circuit Court of Appeals has held that "[a] reorganization plan resembles a consent decree and therefore, should be construed basically as a contract," *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 588 (9th Cir.1993), and that "[q]uestions of contract enforcement and interpretation are subject to *de novo* review unless extrinsic

evidence was admissible on issues, such as intent." *In re Ankeny,* 184 B.R. 64, 68 (9th Cir. BAP 1995).

We need not decide whether we should defer to the trial court's interpretation of the Plan, since our independent review of the Plan accords with the bankruptcy court's.

## IV

## DISCUSSION

### A. *Res Judicata Effect of Confirmed Plan*

Birmingham contends that the Appellant is bound by the confirmed Plan, which did not give the unsecured creditors postpetition interest. The Appellant argues that the Plan did provide as such, as did Jaco's disclosure statement.

Pursuant to Bankruptcy Code ("Code") Section 1141(a), all parties to a confirmed plan are bound by its terms. A confirmation order is a binding, final order, to be accorded full res judicata effect. *In re Heritage Hotel Partnership I,* 160 B.R. 374, 377 (9th Cir. BAP 1993), *aff'd without op.* 59 F.3d 175 (9th Cir.1995). As long as due process is complied with, a confirmed plan binds all entities that hold a claim or interest, even if they are not scheduled, have not filed a claim, have not received a distribution under the plan or are not permitted to retain an interest under such plan. *Id.* A plan confirmation order precludes the raising of issues which could or should have been raised during the pendency of the case. *Id.*

At the close of hearing, the bankruptcy court concluded that the Plan did not establish a right to postpetition interest. The court stated: "The notion that the plan can be read to support payment of post-petition interest, I think, is strained, especially considering that it was a creditors plan."

Our construction of the Plan accords with the bankruptcy court's. Pages 39–40 of the Plan describe the treatment of general unsecured claims. These Class 10 claims are to be paid pro rata after the auction sale. If the auction sale is not held, the Plan provides that the Class 10 claims will be paid "without interest" from the "Distribution Account" after payment of other specified claims. The Plan states: "The

Class 10 Claims are *impaired* pursuant to the Plan." Page 2 of the Plan provides: "Any funds remaining in the Debtor's estate after the payment of unsecured claims will be distributed to holders of equity interests."

Jaco's disclosure statement provides further detail. It states: "If there is any inconsistency between the Plan and the Disclosure Statement, the Plan will be, and is controlling." The disclosure statement estimates that the allowed or provisionally allowed claims in Class 10 will total $970,000 and distributions to that class will total $650,000 – $700,000. The "Assumptions" section attached to the disclosure statement assumes that the Class 10 creditors will be paid 69 percent of their total claims.

Neither the Plan nor the disclosure statement distinctly addresses whether general unsecured creditors could receive postpetition interest. On one hand, it could be argued that by specifying that no interest will be paid if an auction sale is not held, the Plan implies that interest will be paid if there is an auction sale. On the other hand, this provision could be construed as demonstrating that interest payments were considered and rejected.

The other cited Plan provisions indicate that there was no intent to pay postpetition interest. The Plan provides that the general unsecured claims are impaired and that equity holders will be paid after unsecured claims are paid, and the disclosure statement estimates that the claims will not be paid in full. These latter statements indicate that postpetition interest was not intended. Viewing the Plan and disclosure statement in toto, it appears that postpetition interest was not contemplated.

Birmingham also points out that under Code Section 502(b)(2), postpetition interest is not an authorized element of an allowed claim. This point has little relevance. Whether postpetition interest may be included in the amount of an allowed claim is a separate issue from whether that allowed claim may accrue postpetition interest. "The definition of the amount of a claim is not the same as the amount to be paid on that claim." *In re David Green Property Management,* 164 B.R. 92, 96 (Bankr.W.D.Mo. 1994). Furthermore, the Appellant's claim

was not allowed at the time of plan confirmation. Because its claim was disputed, it had been temporarily allowed for voting purposes only at that time.

The Appellant contends that the Plan should not be given res judicata effect, because the creditors were misled about the estate's solvency at the time they voted for the Plan. Given that the disclosure statement represented that unsecured nonpriority claims would not be paid in full, the creditors had no reason to reject the Plan on the basis that it did not provide them interest.

> The doctrine of res judicata extends only to the facts and conditions as they existed at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts determined in the judgment. When other facts or conditions intervene, forming a new basis for a claim, the issues are no longer the same and res judicata does not apply.

*Clark v. Yosemite Community College Dist.,* 785 F.2d 781, 789 (9th Cir.1986) (citations omitted).

The Appellant's contention has little merit. The disclosure statement only estimated the amount the unsecured creditors would be paid. This amount was presented not as fact, but as speculation. The facts did not change. The auction was held as promised. It was just more successful than originally estimated.

If the Appellant believed it was intentionally misled, it should have filed a request for revocation of the confirmation order pursuant to Code Section 1144, for relief from the order under Fed.R .Bankr.P. 9024 or possibly for equitable relief under Code Section 105. It has done none of these; instead it has tried to attack the order collaterally. The fact that the disclosure statement underestimated the gains from the auction does not defeat the res judicata effect of the confirmed Plan.

### B. *Best Interests of Creditors Test*

The Appellant maintains that it is entitled to interest under the "best interests of creditors" test found in Section 1129(a)(7). This test asks whether a creditor would retain or receive under the Chapter 11 plan what it would receive under a Chapter 7 liquidation.

The Appellant states that if the Debtor had liquidated under the provisions of Chapter 7 instead of Chapter 11, Code Section 726(a)(5) would preclude Birmingham and the other partners of the Debtor from receiving any estate assets until postpetition interest had been paid on all claims. Because the Appellant would have been paid interest in a Chapter 7 liquidation, the best interest of creditors test requires that the Appellant receive interest in the Chapter 11 case. This analysis was used in *In re San Joaquin Estates, Inc.,* 64 B.R. 534 (9th Cir. BAP 1986):

> We look to a liquidation analysis under §§ 726(a)(5) and 1129. In a distribution under Chapter 7 post-petition interest will be paid at the legal rate from the estate to the extent a surplus of assets remain for the debtor at the close of the estate. A Chapter 11 creditor is entitled to at least as much as it would receive under Chapter 7. Under the circumstances here, where there is a very solvent debtor, similar creditors in Chapter 7 would receive postpetition interest on their claims. The trial court abused its discretion in not awarding post-petition interest.

*Id.* at 536.

However, *San Joaquin Estates* is materially distinguishable. At issue was whether postpetition interest could be included in creditors' claims. No mention was made in that case of a Chapter 11 plan. In contrast, the Appellant in the instant case is impeded by the Plan which does not provide for postpetition interest. The Appellant lost any prospect of postpetition interest when the Plan was confirmed.

 The best interest of creditors test is applied to creditors with impaired claims who do not vote to accept the plan. *See In re M. Long Arabians,* 103 B.R. 211, 216 (9th Cir. BAP 1989). Section 1129(a)(7)(A) is written in the disjunctive. The section requires that each holder of a claim or interest of an impaired class either (i) accept the plan *or* (ii) receive or retain at least as much as it would receive in liquidation. Since the Appellant accepted the Plan, the best interest of creditors test does not apply.

Also, the best interests of creditors test is a pre-confirmation requirement. The time frame for the test is the date of confirmation. It would be error for the Panel, with the benefit of hindsight, to apply it as of the date of the auction sale. When the Plan was confirmed it was in the creditors' best interests. Section 726(a)(5) should not be interpreted as *mandating the payment of* postpetition interest to unsecured creditors whenever after confirmation of the plan there should appear the *possibility* that the debtor may retain funds. *In re Kentucky Lumber Co.,* 860 F.2d 674, 678 (6th Cir. 1988).

## V

## CONCLUSION

Because the Plan does not provide unsecured creditors with postpetition interest, Code Section 1141(a) precludes the Appellant from arguing that it is entitled to such interest. Neither equitable considerations nor the best interests of creditors test change the fact that the Appellant is bound by the Plan.

We **AFFIRM** the bankruptcy court's ruling that the Appellant is not entitled to postpetition interest.